## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELEANOR MCKOY, individually and as the personal representative of the estate of Timothy Lionel Williams,  )<br>)<br>)<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>DISTRICT OF COLUMBIA, et al.,  )<br>)<br>Defendants.  )<br>) | Civil Action No. 18-416 (RBW) |

## MEMORANDUM OPINION

The plaintiff, Eleanor McKoy, brings this civil action individually and as the personal representative of the estate of Timothy Lionell Williams, against the defendants, the District of Columbia and District of Columbia Metropolitan Police Department ("MPD") officers Patrick Bacon and Antoine Brathwaite, asserting a claim of excessive force pursuant to 42 U.S.C. § 1983 (Count III), as well as common-law claims of assault (Count IV), battery (Count V), and false arrest (Count VI).[1]  See Amended Complaint and Jury Demand ("Am. Compl.") ¶¶ 38–85. Currently pending before the Court is the Defendants' Motion for Summary Judgment ("Defs.'

---

[1] Counts I and II of the Amended Complaint allege that the plaintiff brings this action pursuant to the Survival Act, D.C. Code § 12-101 and the Wrongful Death Act, D.C. Code § 16-2701. Am. Compl. ¶¶ 32–37. The Survival Act merely "allows a surviving representative to stand in the shoes of the deceased, and to sue as the deceased would have had a right to sue had he lived." Perry v. Criss Bros. Iron Works, 741 F. Supp. 985, 987 (D.D.C. 1990) (citing Semler v. Psychiatric Inst. of Washington, D.C., 575 F.2d 922, 925 (D.C. Cir. 1978); Jones v. Rogers Memorial Hosp., 442 F.2d 773 (D.C. Cir. 1971)). Similarly, the Wrongful Death Act permits the surviving legal representative "to sue for any damages [the legal representative] suffered due to the loss of [the decedent]." Buruca v. District of Columbia, 902 F. Supp. 2d 75, 87 (D.D.C. 2012). "[N]either statute provides any substantive rights; they simply establish the procedural methods for filing suit." Id. Therefore, to the extent Counts I and II may attempt to allege separate claims, the Court must dismiss them. See id. (citing Wallace v. District of Columbia, 685 F.Supp.2d 104, 112–13 (D.D.C. 2010)).

Mot."). Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant in part and deny in part the defendants' motion.

## I. BACKGROUND

The following facts are undisputed by the parties, unless otherwise indicated. On February 23, 2017, at approximately 10:37 p.m., Officers Antoine Brathwaite and Patrick Bacon, while "in full uniform with [ ] badges and patches displayed, . . . were patrolling the Trinidad area of Northeast, Washington, D.C." Defs.' Facts ¶¶ 1–3; see Pl.'s Facts ¶¶ 1–3. Officer Bacon, with Officer Brathwaite as the passenger, were in an unmarked MPD vehicle, Defs.' Facts ¶¶ 2–3; see Pl.'s Facts ¶¶ 2–3, when they observed "another unmarked MPD vehicle [ ] conducting a traffic stop on Florida Avenue, N.E." Defs.' Facts ¶ 4; see also Pl.'s Facts ¶ 4. The two officers also "observed [ ] [Timothy Lionell] Williams walking down the street," Defs.' Facts ¶ 5; see Pl.'s Facts ¶ 5, and "Officer Brathwaite rolled down the passenger side window of the police cruiser and asked [ ] Williams if he could speak to him," Defs.' Facts ¶ 9; Pl.'s Facts ¶ 10. "Officer Brathwaite then exited the vehicle and began to follow [ ] Williams." Defs.' Facts ¶ 10; see Pl.'s Facts ¶ 10.

Shortly thereafter, "Williams ran westbound across Holbrook Street, and then fled eastbound on Holbrook Street." Defs.' Facts ¶ 12; see Pl.'s Facts ¶ 12. Officer Brathwaite, who suspected Williams was carrying a weapon, pursued Williams and Officer Bacon maneuvered the MPD vehicle "just past the intersection of Holbrook and Morse Streets." Defs.' Facts ¶ 13;

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."); (2) the Defendants' Statement of Material Facts as to Which There Is No Genuine Issue ("Defs.' Facts"); (3) the Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Memorandum of Points and Authorities in Support of the Plaintiff's Opposition to Defendants' Second Motion for Summary Judgment ("Pl.'s Mem."); (5) the Plaintiff's Response to Defendants' Statement of Material Facts as to Which There Is No Genuine Issue ("Pl.'s Facts"); and (6) the Defendants' Reply to Plaintiff's Opposition to Their Motion for Summary Judgment ("Defs.' Reply").

see Pl.'s Facts ¶ 13. Williams "attempted to run westbound across Holbrook Street, when he tripped and struck the unmarked MPD vehicle." Defs.' Facts ¶ 14; see Pl.'s Facts ¶ 14. "Williams fell to the ground and dropped" an item that the defendants contend—and the plaintiff disputes—was "a 9mm pistol magazine." See Defs.' Facts ¶ 15; Pl.'s Facts ¶ 15. "Officer Brathwaite then attempted to subdue [ ] Williams[,]" while "Officer Bacon exited the vehicle to assist . . . ." Defs.' Facts ¶¶ 16–17; see Pl.'s Facts ¶¶ 16–17.

According to the defendants, after some further physical engagement between the officers and Williams, see Defs.' Facts ¶ 23, Williams "began firing [a] gun that he possessed," id. ¶ 24. The plaintiff disputes this characterization.[3] See Pl.'s Facts at ¶¶ 23–24. The defendants contend that Officer Brathwaite "disengaged from [ ] Williams and returned [ ] gunfire" before "clos[ing] the distance between himself and [ ] Williams, who . . . continued to fight with Officer Bacon." Defs.' Facts ¶¶ 26–27; see Pl.'s Facts ¶¶ 26–27. "As Officer Brathwaite approached, Officer Bacon shouted for Officer Brathwaite to shoot [ ] Williams." Defs.' Facts ¶ 28; see Pl.'s Facts ¶ 28. Officer Brathwaite then "fired his service pistol" three times and "Williams' body went limp." Defs.' Facts ¶¶ 30–31; see Pl.'s Facts ¶¶ 30–31. Thereafter, Officer Bacon "realized [ ] he had been shot by [ ] Williams." Defs.' Facts ¶ 32; see Pl.'s Facts ¶ 32. The officers and Williams "were taken by ambulance to the hospital, [and] crime-scene technicians recovered" the following evidence from the location of the shooting: (1) "a Springfield XD-9" handgun; (2) a "9mm semi-automatic pistol"; (3) "a firearms magazine"; and (4) "twelve WIN

---

[3] The Officers' body-worn camera footage, Defs.' Mot., Exhibit ("Ex.") 4 (Bacon Video), Defs.' Mot., Ex. 5 (Brathwaite Video), depict many of the pertinent events from the Officers' individual points of view. Officer Bacon's video demonstrates that gunfire occurred prior to Officer Brathwaite disengaging from the struggle that he and Officer Bacon were having with Williams. See Defs.' Mot., Exhibit ("Ex.") 4 (Bacon Video) at 01:26.

9mm Luger cartridge casings[,] which were ultimately found to have been fired by the Springfield XD-9 [that was recovered] at the scene." Defs.' Facts ¶ 33;[4] see Pl.'s Facts ¶ 33.

On November 12, 2018, the plaintiff filed her Amended Complaint in this case. See generally Am. Compl. In response, on December 21, 2018, the defendants filed their first summary judgment motion, see Defendants' Motion for Summary Judgment (December 21, 2018), ECF No. 18, which the Court denied, see Order at 1 (Mar. 8, 2019), ECF No. 22. Following the completion of discovery, see Order (Dec. 2, 2019), ECF No. 27, the defendants renewed their motion for summary judgment, see generally Defs.' Mot., which is the subject of this Memorandum Opinion.

## II.  STANDARD OF REVIEW

A court may grant a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party

---

[4] While the defendants' facts label this paragraph as the thirty-first paragraph, it is actually the thirty-third paragraph. The Court will therefore refer to it as the thirty-third paragraph moving forward.

4

"fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.   ANALYSIS

The defendants argue that the plaintiff's claims must be dismissed as a matter of law. See Defs.' Mot. at 1–2. Specifically, the defendants contend that the Court must grant summary judgment in their favor on: (1) the plaintiff's excessive force claim (Count III)[5] because the officers' "conduct was objectively reasonable," and they are therefore entitled to qualified immunity; (2) the plaintiff's assault claim (Count IV) "because the officers' pursuit of [Williams] was lawful"; (3) the plaintiff's battery claim (Count V) "because the officers' use of force was reasonably necessary and privileged"; and (4) the plaintiff's false arrest claim (Count

---

[5] The plaintiff brought her excessive force claim under the Fourth, Fifth, and Fourteenth Amendments. See Am. Compl. ¶¶ 38–61. However, the plaintiff now concedes that this "claim is not properly brought under the Fifth and Fourteenth Amendments to the Constitution." Pl.'s Mem. at 4. Accordingly, the Court will dismiss as conceded those aspects of the claim and consider her excessive force claim only under the Fourth Amendment.

5

VI) "because the officers were privileged to conduct a Terry [v. Ohio, 392 U.S. 1 (1968),] stop of [Williams]." Id. at 1. The Court will address each of the defendants' arguments in turn.[6]

**A.      The Plaintiff's False Arrest Claim (Count VI)**

The plaintiff alleges that the defendants falsely arrested Williams without "probable cause" or "legal justification." Am. Compl. ¶¶ 80–81. The defendants argue in response that "the officers had an articulable suspicion [under Terry] that [ ] Williams was carrying a gun and therefore [they] could lawfully detain him for investigatory purposes." Defs.' Reply at 8; see also Defs.' Mem. at 7–9; Defs.' Mot. at 1 ("[T]he officers were privileged to conduct a Terry stop of [the p]laintiff[.]"). But for the reasons that follow, whether the officers acted reasonably under Terry such that they are shielded from liability is a question for a jury to decide—and not the Court—on summary judgment. See Goolsby v. District of Columbia, 317 F. Supp. 3d 582, 596 (D.D.C. 2018) (concluding "that a genuine issue of material fact preclude[d] summary judgment" on a false arrest claim); Wood v. District of Columbia, Civ. Action No. 14-2066 (EGS), 2017 WL 2374346, at *5 (D.D.C. May 31, 2017) (concluding that a plaintiff's false arrest claim failed only where "officers had the reasonable suspicion required to effectuate an initial investigatory stop" and where "officers had probable cause for an [ ] arrest[]"); District of Columbia v. Minor, 740 A.2d 523, 529 (D.C. 1999) (holding juries are the "finders of fact" that would assess, for example, a "probable cause determination").

Pursuant to Terry,

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the

---

[6] The defendant also argues that the plaintiff has effectively admitted the defendants' version of the facts because she "merely states 'disputed' in response to many of [the d]efendants' statements, which were supported by a record citation." Defs.' Reply at 2. However, the Court concludes that the plaintiff has satisfied her obligation to provide "a separate concise statement of genuine issues . . . , include[ing] references to the parts of the record relied on to support the statement." LCvR7(h)(1); see Fed. R. Civ. P. 56(c)(1)(A). See generally Pl.'s Facts; Pl.'s Mem. at 2–3.

> persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Terry, 392 U.S. at 30. Thus, Terry requires evaluating: "[(1)] whether the officer's action was justified at its inception, and [(2)] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 20. And, as the District of Columbia Circuit explained in United States v. Bailey,

> [a] Terry stop requires only a minimal level of objective justification. . . . An officer may initiate a Terry stop based not on certainty but on the need to check out a reasonable suspicion. Moreover, whether reasonable suspicion exists depends on the totality of circumstances as viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.

622 F.3d 1, 5 (D.C. Cir. 2010) (internal quotation marks and citations omitted).

Here, the Court must evaluate "whether, viewing the facts in the light most favorable to [the p]laintiff, [the defendants] seized [Williams] in violation of his Fourth Amendment right to be free from unreasonable seizures." See Maddux v. District of Columbia, 144 F. Supp. 3d 131, 140–41 (D.D.C. 2015). According to the defendants, four events justified the officers' stop of Williams. See Defs.' Mem. at 8–9. First, "the officers observed [ ] Williams walking down the street and continually looking back at the police lights" from another unmarked MPD vehicle that was conducting a traffic stop on Florida Avenue, N.E. Id. at 8. Second, "Officer Bacon [ ] observed [ ] Williams walk between two parked vehicles while he adjusted the waistband of his pants[,]" and "[b]ased on his experience, Officer Bacon, suspected that [ ] Williams' actions were characteristic of an armed gunman." Id. Third, Officer Brathwaite followed Williams on foot and "asked [ ] Williams if he could speak with him, but [Williams] refused." Id. Fourth, the

7

defendants assert that "Williams ran westbound across Holbrook Street, Northeast, and then fled eastbound on Holbrook Street." Id. at 8–9.  In sum, the defendants argue that "[g]iven [ ] Williams' nervous response to the sight of a police vehicle, his walking between two parked cars to adjust his waistband, and his subsequent flight, the officers acquired an articulable suspicion sufficient to conduct a Terry stop."  Id. at 9.  In response, the plaintiff argues that "the determination of whether or not [ ] Williams was unlawfully detained should be left to the jury to decide and not resolved at this stage of the litigation."  Pl.'s Mem. at 7.

      The Court agrees with the plaintiff.  Crucially, there is a factual dispute as to (1) whether Williams was continually looking back at the police lights from the traffic stop, compare Defs.' Facts ¶ 6 with Pl.'s Facts ¶ 6 (citing Defs.' Mot., Ex. 3 (Brathwaite Video)), and (2) whether Williams walked between two vehicles while he adjusted the waistband of his pants, compare Defs.' Facts ¶ 7 with Pl.'s Facts ¶ 7 (citing Defs.' Mot., Ex. 3 (Brathwaite Video)).  Neither of the officers' body-worn cameras captured these events, see generally Defs.' Mot., Ex. 3 (Brathwaite Video); Defs.' Mot., Ex. 4 (Bacon Video), and there is no indisputable proof from the record that the cameras would not have captured those actions by Williams.  Indeed, the defendants' sole support for their contentions are the officers' declarations, see Defs.' Facts ¶¶ 6, 7, which arguably conflict with the lack of any support provided by the body-worn camera footage.  Because of this plausible conflict and the requirement that "the evidence [ ] be analyzed in the light most favorable to the non-movant," Johnson v. District of Columbia, Civ. Action No. 17-883 (CKK), 2020 WL 5816236, at *4 (D.D.C. Sept. 30, 2020), the Court cannot conclude, for summary judgment purposes, that the undisputed facts demonstrate a valid reasonable stop under Terry.

Furthermore, the Court cannot agree with the defendants that "[o]nce [ ] Williams fled the scene, the officers were privileged to give chase and to use force to seize him to effectuate their investigation." Defs.' Mem. at 9.

> The [Supreme] Court in [Illinois v.]Wardlow[, 528 U.S. 119 (2000),] applied the standard for reasonable suspicion articulated in Terry to hold that 'unprovoked,' '[h]eadlong flight' in combination with 'presence in an area of expected criminal activity'—elsewhere referred to in the opinion as a 'high[-]crime area' or 'area of heavy narcotics trafficking'—suffices to justify further investigation through a brief detention."

United States v. Gorham, 317 F. Supp. 3d 459, 463 (D.D.C. 2018) (quoting Wardlow, 528 U.S. at 124–26) (fourth and fifth alterations in original)). While it is undisputed that Williams ran from the officers, the defendants have not alleged that the Officers' encounter with Williams occurred in a "high-crime area." See id. ("Because [the] flight from the police occurred in a high-crime area[—here, an area recently experiencing a rising level of gun violence—], the Court concludes that the seizure . . . did not violate the Fourth Amendment.") Moreover, the Court cannot otherwise conclude that Williams' flight was "indicative of wrongdoing" without weighing disputed material facts. See Wardlow, 528 U.S. at 124. Indeed, there is no "per se rule authorizing the temporary detention of anyone who flees upon seeing a police officer[,]" Daniels v. District of Columbia, 894 F. Supp. 2d 61, 66 (D.D.C. 2012), as the Supreme Court concluded in Wardlow, that flight is not "necessarily indicative of wrongdoing[,]" 528 U.S. at 120.

In sum, by asking the Court to conclude that as a matter of law there was a valid Terry stop based on the record in this case, the defendants are "essentially asking the Court to draw inferences in their favor." See id. However, when ruling on a motion for summary judgment, the Court is required to do precisely the opposite. Anderson, 477 U.S. at 255 (noting that, when ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed,

9

and all justifiable inferences are to be drawn in h[er] favor."). The Court must therefore deny the defendants' motion for summary judgment on the plaintiff's false arrest claim.

**B.      The Plaintiff's Excessive Force Claim (Count III)**

Where, as in this case, a plaintiff brings a claim under 42 U.S.C. § 1983, a defendant may raise the defense of qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The doctrine of qualified immunity shields police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted) (quoting Harlow, 457 U.S. at 818). Once a defendant asserts the defense of qualified immunity, "the burden of proof then falls to the plaintiff to show that the [defendan]t is not entitled to qualified immunity." Winder v. Erste, 905 F. Supp. 2d 19, 28 (D.D.C. 2012). "[W]hether a . . . defendant's conduct violates the 'clearly established' constitutional rights of the plaintiff is a pure question of law that must be resolved by the [C]ourt." Pitt v. District of Columbia, 491 F.3d 494, 509 (D.C. Cir. 2007).

> To decide the issue of whether or not the non-movant may survive summary judgment [on a Section 1983 claim]—i.e., whether [s]he has provided enough evidence that a reasonable jury could return a verdict in h[er] favor—the [C]ourt must first identify[] the version of events that best comports with the summary judgment standard and then ask[] whether, given that set of facts, a reasonable officer should have known that his actions were unlawful.

Kyle v. Bedlion, 177 F. Supp. 3d 380, 389 (D.D.C. 2016) (fifth and sixth alterations in original) (citation and internal quotation marks omitted).

> [A] defendant's motion for summary judgment is to be denied only when, viewing the facts in the record and all reasonable inferences derived therefrom in the light most favorable to the plaintiff, a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions.

10

Wardlaw v. Pickett, 1 F.3d 1297, 1303 (D.C. Cir. 1993) (citing Martin v. Malhoyt, 830 F.2d 237, 253–54 (D.C. Cir. 1987)).  However, "[q]ualified immunity cannot be granted on summary judgment . . . if there is a genuine issue as to a material issue of fact."  Arrington v. United States, 473 F.3d 329, 339 (D.C. Cir. 2006).

Here, the plaintiff asserts that "[a]t the time of [ ] Williams' death, [Williams] enjoyed the constitutional right to be secure in his person[,]" and "[w]hen [ ] [O]fficer Brathwaite discharged his weapon a second and third time into the back of [ ] Williams as [Williams] lay disabled and defenseless causing [Williams'] death, [ ] [O]fficer Brathwaite violated [ ]Williams['] constitutional right to be secure in his person."  Pl.'s Mem. at 5.  The defendants respond that the "[p]laintiff fails to consider the split-second decision that Officer Brathwaite was required to make when his life and Officer Bacon's life were literally on the line."  Defs.' Reply at 5.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]"  Graham v. Connor, 490 U.S. 386, 395 (1989).  Whether a particular use of force is reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396 (citing Terry, 392 U.S. at 20–22).  The Court must also make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Id. at 397.

11

With regard to all three gunshots fired by Officer Brathwaite, the Court concludes that there is sufficient undisputed evidence in the record to establish that Officer Brathwaite is entitled to qualified immunity because he "acted as any reasonable officer would have when faced with the same situation[.]" See Arrington v. District of Columbia, 597 F. Supp. 2d 52, 61 (D.D.C. 2009) (Walton, J.). In examining Officer Brathwaite's conduct, the Court must assess "whether an objectively reasonable officer would have believed his conduct to be lawful, in light of clearly established law[.]" Pitt, 491 F.3d at 509–10. As noted earlier, "th[e] Court applies an analysis that 'allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation.'" United States v. Slatten, 865 F.3d 767, 814 (D.C. Cir. 2017) (second alteration in original) (quoting Robinson v. Pezzat, 818 F.3d 1, 8 (D.C. Cir. 2016)). Here, the officers' body-worn camera footage clearly establishes that Williams fired multiple shots just prior to Officer Brathwaite separating himself from the altercation with Williams and Officer Bacon. See Defs.' Mot., Ex. 4 (Bacon Video) at 01:26. Indeed, Officer Brathwaite observed Williams "continue[] to fight with Officer Bacon," Defs.' Facts ¶ 27; see Pl.'s Facts ¶ 27, which, after the initial gunfire, resulted in "Officer Bacon shout[ing] for Officer Brathwaite to shoot [ ] Williams[,]" Defs.' Facts ¶ 28; see Pl.'s Facts ¶ 28. Officer Brathwaite then "fired his service pistol three times" in rapid succession, Defs.' Facts ¶ 30; see Pl.'s Facts ¶ 30; see also Defs.' Mot., Ex. 3 (Brathwaite Video) at 01:59, striking Williams, see Defs.' Facts ¶ 31; Pl.'s Facts ¶ 31. "It was not until [ ] Williams was no longer a threat that [ ] Officer Bacon realized he had been shot by [ ] Williams." Defs.' Facts ¶ 32; see Pl.'s Facts ¶ 32.

> "After [ ] Williams and Officer Bacon were taken by ambulance to the hospital, crime scene technicians recovered a . . . semi-automatic pistol, a firearms magazine, and twelve . . . cartridge casings which were ultimately found to have been fired by the [semi-automatic pistol that was recovered] at the scene."

12

Defs.' Facts ¶ 33; see Pl.'s Facts ¶ 33.  Given these facts, the Court can only conclude that the situation facing Officer Brathwaite at the moment he fired his weapon was emblematic of a "tense, uncertain[,] and rapidly evolving" scenario, Slatten, 865 F.3d at 814, that precludes the Court second-guessing the actions of Officer Brathwaite, see Graham, 490 U.S. at 396–97 ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").  In firing multiple shots at Williams, Officer Brathwaite reacted to his reasonable perception of a rapidly developing and potentially deadly situation by acting to protect himself and Officer Bacon.  See, e.g. Plumhoff v. Rickard, 572 U.S. 765, 777 (2014) (holding that "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended" and concluding that it was not unreasonable for officers to fire fifteen shots in a ten-second span); Rush v. City of Lansing, 644 F. App'x 415, 419–25 (6th Cir. 2016) (holding that it was not unreasonable for an officer to fire a second shot at a suspect the officer reasonably still perceived as a threat, "even if [the officer] was ultimately mistaken in making a split-second assessment").

  The plaintiff argues that the "officers should have known that the shooting of an arrestee who lay defenseless on the ground would be clearly an assault and battery and therefore unlawful."  Pl.'s Mem. at 6.  However, the plaintiff identifies no evidence in the record that demonstrates Williams was "lay[ing] defenseless on the ground[.]"  See id.  To the contrary, as the Court noted above, the record reflects that Williams continually fought the officers once he was tackled, which included shooting a firearm during the struggle.  See Defs.' Facts ¶¶ 26–28, 30–33; Pl.'s Facts ¶¶ 26–28, 30–33.  The plaintiff's position also fails to account for the uncertain and dangerous aspects of the evolving situation—namely, the continued struggle, the

13

initial gunshots, and Officer Bacon's dire shouts for help—during which the defendants correctly note "it was not unreasonable for Officer Brathwaite to fire [three shots[7]] within seconds." See Defs.' Reply at 5 (citing Defs.' Mot., Ex. 3 (Brathwaite Video) at 01:59). The plaintiff further fails to distinguish the abundant case law requiring deference to officers acting quickly and in response to dangerous situations. See Pl.'s Mem. at 6 (referring only to D.C. Code § 5-123.02 to argue the "officers should have known that the shooting . . . would be clearly an assault and battery); see also Defs' Mem. at 7 (citing cases). Accordingly, the Court must grant in part the defendants' motion for summary judgment on the plaintiff's excessive force claim as to the shots fired by Officer Brathwaite because Officer Brathwaite is entitled to qualified immunity for firing those shots.

However, the Court must also deny in part the defendant's motion for summary judgment on the plaintiff's excessive force claim in all other respects. "In assessing whether a party is entitled to qualified immunity, the facts must be taken in the light most favorable to the party asserting the constitutional injury." Pitt v. District of Columbia, 558 F. Supp. 2d 11, 16 (D.D.C. 2008). Here, the plausible factual conflict the Court previously identified in connection with the plaintiff's false arrest claim—namely, the dichotomy between the officers' body-worn camera footage and their subsequent statements—requires that the Court construe the applicable facts in favor of the plaintiff. Accordingly, the Court cannot determine as a matter of law that the officers are entitled to qualified immunity in connection with all other actions that occurred prior to and during the confrontation with Williams, namely, the pursuit and physical altercation

---

[7] The defendants' point here pertains to the "second and third shot[s]" being fired within seconds. Defs.' Reply at 5. This appears to be because "[the p]laintiff does not take exception to the first shot but argues that it should have been plainly clear to Officer Brathwaite that he only needed to shoot once to eliminate the t`hreat." Defs.' Reply at 5. Regardless of the plaintiff's argument on this point, the Court already concluded that Officer Brathwaite reasonably fired all three shots.

before the initial shots were fired by Williams.[8]  See Magliore v. Brooks, 844 F. Supp. 2d 38, 45 (D.D.C. 2012) (denying District of Columbia police officers' summary judgment motion regarding, inter alia, excessive force, assault, and battery claims where material facts were in dispute and the evaluation of witness testimony and other evidence were "ultimately [ ] decision[s] to be made by a jury, not in a summary judgment ruling").

C.   **The Plaintiff's Assault and Battery Claims (Counts IV and V)**

The plaintiff also alleges that the defendants (1) assaulted Williams by engaging in "harmful conduct towards [him]," Am. Compl. ¶ 63, that "caused . . . Williams to reasonably apprehend that he would be subjected to imminent harmful or offensive contact and that [the officers] had the clear and present ability to carry out the expected harmful or offensive contact," id. ¶ 64, and (2) "intentionally battered Williams by holding [him] on the ground and shooting him without provocation or a valid basis to do so, which resulted in [ ] Williams' death[,]" id. ¶ 73.  The defendants argue in response that the officers are entitled to qualified privilege under District of Columbia law, and that because "the use of deadly force was objectively reasonable, the common law qualified privilege bars [the] [p]laintiff's battery claims."  Defs.' Mem. at 10.  The plaintiff responds that "Officers Brathwaite and Bacon intentionally harmed [ ] Williams in derogation of his Fourth Amendment rights and did so by using unnecessary and wanton severity in arresting him[,]" Pl.'s Mem. at 7–8, and "[n]o reasonable police offer can plausibly claim that he lacked the knowledge regarding [ ] fundamental restrictions upon police conduct," id.

---

[8] While the plaintiff in her opposition has only specifically refered to the shots fired by Officer Brathwaite in responding to the defendant's challenge to her excessive force claim, see Pl.'s Mem. at 7–8, the plaintiff's assertion in prior briefing that "[t]he central factual issue in this litigation remains whether the [d]efendant officers used excessive force during the stop and subsequent arrest of [Williams,]" Memorandum of Points and Authorities in Support of the Plaintiff's Opposition to Defendants' [First] Motion For Summary Judgment at 6, ECF No. 20-1 together with the Amended Complaint's allegations of additional underlying facts, see, e.g., Am. Compl. ¶ 48 (referencing "h[o]ld[ing] [Williams] down in the middle of the street"), are sufficient to implicate all of the officers' actions committed in connection with the attempts to stop and subdue Williams.

Under District of Columbia law, "[a] police officer has a qualified privilege to use reasonable force to effect an arrest," so long as "the means employed are not in excess of those which the [officer] reasonably believes . . . [are] necessary." Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993) (internal quotation marks omitted). "This standard is similar to the excessive force standard applied in the Section 1983 context." Rogala v. District of Columbia, 161 F.3d 44, 57 (D.C. Cir. 1998) (citing Etheredge, 635 A.2d at 915 n.10).

The parties make fundamentally similar arguments regarding the plaintiff's excessive assault and battery claims to those made regarding the plaintiff's excessive force claim in Count III. See Defs.' Mem. at 5–7, 9–11 (asserting the application of qualified immunity and qualified privilege to the officers' uses of force); Pl.'s Mem. at 4–6, 7–8 (arguing against the application of qualified immunity for all claims involving the officers' alleged use of force). Specifically, the plaintiff here argues that "[t]he body[-]worn camera footage plainly demonstrates that [ ] [O]fficer Brathwaite sho[]t [ ] Williams a second and third time after the first shot disabled him and left him defenseless on the ground[,]" and that "[t]his conduct constitutes assault and battery and[,] at the very least[,] presents a question for [the] fact-finder . . . ." Pl.'s Mem. at 8. In response, the defendants correctly note that the plaintiff is "essentially mak[ing] the identical argument [advanced in support of her] Fourth Amendment claim[.]" Defs.' Reply at 8. Indeed, the plaintiff's arguments regarding Officer Brathwaite's use of deadly force within the context of her assault and battery claims can be analyzed under the same reasonableness standard discussed earlier in this Memorandum Opinion in the context of analyzing the plaintiff's excessive force claim, see Part III.B, supra. See Rogala, 161 F.3d at 57 (concluding that assault and battery claims against an officer and the District of Columbia failed "[f]or substantially the reasons discussed [concerning an excessive force claim under Section 1983]"). To the extent the assault

16

and battery alleged by the plaintiff implicate the shots fired by Officer Brathwaite, the Court concludes, for the same reasons provided in its discussion of the plaintiff's excessive force claim, that summary judgment for the defendants is required.

However, as the Court also previously concluded regarding the plaintiff's excessive force claim, the Court cannot determine as a matter of law that the defendants' conduct was objectively reasonable such that qualified privilege precludes liability for all actions taken by Officer Brathwaite and Bacon before the initial shots were fired by Williams and Officer Bacon told Officer Brathwaite to shoot Williams.[9]  See Magliore, 844 F. Supp. 2d at 45.  Accordingly, the Court must similarly (1) grant the defendants' motion for summary judgment on the plaintiff's assault and battery claims to the extent these claims pertain to Officer Brathwaite's decision to fire multiple shots at Williams, and (2) deny the defendants' motion for summary judgment on the plaintiff's assault and battery claims in all other respects.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the defendant's summary judgment motion must be granted in part and denied in part.  Specifically, the Court concludes that, to the extent that the plaintiff's excessive force, assault, and battery claims pertain to the three shots fired by Officer Brathwaite, the defendant's motion for summary judgment must be granted as to

---

[9] While the plaintiff has made her position obscure on this point—as she similarly did in addressing her excessive force claim—by specifically referring to the second and third shots in responding to the defendant's challenge to her assault and battery claims, see Pl.'s Mem. at 8 ("The body[-]worn camera footage plainly demonstrates that [ ] [O]fficer Brathwaite sho[]t [ ]Williams a second and third time after the first shot disabled him and left him defenseless on the ground[,] . . . [which] constitutes assault and battery[.]"), the plaintiff's assertion that "Officers Brathwaite and Bacon intentionally harmed [ ] Williams in derogation of his Fourth Amendment rights and did so by using unnecessary and wanton severity in arresting him[,]" id. at 7–8, is sufficient to address all of the officers' actions committed in connection with the attempts to stop and subdue Williams.  Furthermore, the Amended Complaint alleges facts underlying the plaintiff's battery and assault claims that go beyond just the second and third shots.  See, e.g., Am. Compl. ¶ 63 (referencing the officers' "pursuit of [ ] Williams"); id. ¶ 65 (referencing all three shots fired by Officer Brathwaite); id. ¶ 73–74 (referencing the officers' acts of "holding [Williams] on the ground and shooting him").

these components of the claims.  However, the Court concludes that, due to the presence of disputed facts regarding the officers' initial pursuit of and eventual confrontation with Williams, the Court must deny the defendants' summary judgment motion in all other respects.

      **SO ORDERED** this 27th day of January, 2021.[10]

REGGIE B. WALTON<br>United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.